for upwards of two years and four months longer, before any attempt whatever was made on the part of libelant to enforce his lien. During all this time the vessel was engaged in navigation upon the lakes, and where she might have been seized; and no explanation of the delay is attempted or offered.

It is difficult to conceive of an array of facts affording a stronger or more conclusive presumption that libelant had waived his lien, and looked to the owner alone for payment. The settlement and taking of the note is mentioned in this connection because, although not evidence of an express waiver of lien, it is an important link in the chain of circumstances going to prove a presumptive waiver. The rights of the owner are not now under consideration, and the presumptive waiver of lien by libelant is held to apply only as against the mortgage lien of the intervenors. Therefore, if libelant desires to continue his suit as against the owner, a decree must be entered postponing his lien to the mortgage lien of the intervenors, and that such mortgage lien be first paid to the intervenors, together with their costs of suit to be taxed, out of the proceeds of the sale of the vessel. Otherwise, the libel must be dismissed, with costs to intervenors. Decree accordingly.

═══════

DUBUQUE The (MOIR v.). See Case No. 9,696.

DUBUQUE & S. C. R. CO. (SAYLES v.). See Case No. 12,417.

═══════

## Case No. 4,111.

### DUCATUR v. The DESIRE.

[Bee, 385.]

Admiralty Court of Pennsylvania. 1779.

PRIZE—RECAPTURE.

French owners are entitled to the benefit of the ordinance of congress relative to recaptures.

The question was whether French owners should have the benefit of the ordinance of congress relative to recaptures, and it was so determined.

[Before HOPKINSON, District Judge.]

═══════

DUCHESNE (BROWN v.). See Cases Nos. 2,003 and 2,004.

DUCKETT (ADDISON v.). See Case No. 77.

DUCKWORTH (MINIFIE v.). See Case No. 9,633.

═══════

## Case No. 4,112.

### DUDEN et al. v. ARTHUR.

[24 Int. Rev. Rec. 380.]

Circuit Court, S. D. New York. Oct., 1878.

CUSTOMS DUTIES—CLASSIFICATION — COMMERCIAL DESIGNATION—YAK LACE.

[The question whether, under section 2 of the act of March 2, 1867 (14 Stat. 561), the goods known as "yak lace," which are composed entirely of worsted, are dutiable as "dress trimmings" or as "manufactures of worsted," depends upon whether they are known in commerce as "dress trimmings" or as "laces," which is a question of fact for the jury upon the testimony of merchants dealing in such goods.]

[This was an action by William Duden and others against Chester A. Arthur, collector of the port of New York, to recover duties paid under protest.]

SHIPMAN, District Judge (charging jury). Gentlemen of the Jury: In the year 1873, the plaintiffs imported into this port sundry invoices of an article commonly styled "yak lace," upon which the collector exacted a duty of 50 cents per pound and 50 per cent. ad valorem, upon the ground that the article was dress trimmings made of worsted and dutiable at the rate mentioned under the second section of the act of March 2, 1867. The plaintiffs paid the duty under protest, protesting that the goods were dutiable at 50 cents per pound and 35 per cent. ad valorem as a manufacture of worsted, and not dress trimming, under the same section of the same act which has been cited. Appeal was duly taken to the secretary of the treasury, who affirmed the decision of the collector, and in seasonable time this action was brought for the purpose of recovering the excess of duties which is claimed to have been illegally exacted.

These facts are admitted to have been substantially proven: 1st. That the article is a lace, and is exclusively made of worsted; 2nd, that it is universally bought and sold under the name of yak lace; and 3d, that its general use has been as dress and cloak trimming, though it could be, and has been, used for the trimming of parasols and of curtains. The statute provided a duty of 50 cents per pound and 50 per cent. ad valorem upon "webbings, beltings, bindings, braids, galloons, fringes, gimps, cords, cords and tassels, dress trimmings, etc., made of worsted." Upon "flannels, etc., and all manufactures of every description composed wholly or in part of worsted not otherwise provided for, valued at above 80 cents per pound, 50 cents per pound and 35 per cent. ad valorem." The plaintiffs claim that although the general use of this article has been since its first importation into this country, about the year 1872, for dress trimmings, that is commercial designation and signification among importers and wholesale dealers generally, it is not a dress trimming, but comes under the head of laces. The presumption is that the term "dress trimmings" includes all articles of worsted which are in general specially used for that particular purpose, and this presumption continues until the plaintiffs show by fair preponderance of proof, either that the term "dress trimmings" has in commercial use acquired a special and restricted meaning, or that in trade